**AMENDED**

# UNITED STATES DISTRICT COURT
## FOR THE
## SOUTHERN DISTRICT OF CALIFORNIA

**AMENDED**

### Petition for Warrant or Summons for Offender Under Supervision

**Name of Offender:** Edward Nunez (English)          **Dkt. No.:** 19CR01851-001-JO

**Reg. No.:** 84941-298

**Name of Sentencing Judicial Officer:** Originally sentenced by the Honorable M. James Lorenz, Senior U.S. District Judge. On August 23, 2022, the case was reassigned to the Honorable Jinsook Ohta, U.S. District Judge.

**Original Offense:** 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm, a Class C felony.

**Date of Sentence:** December 9, 2019

**Sentence:** 33 months' custody; 3 years' supervised release. *(Special Conditions: Refer to Judgment and Commitment Order.)*

**Modification:** On June 3, 2022, the conditions of supervised release were modified to remit the previously imposed search condition and to add the 4th waiver search condition.

**Type of Supervision:** Supervised Release          **Date Supervision Commenced:** November 29, 2021

**Asst. U.S. Atty.:** C. Seth Askins          **Defense Counsel:**     Robert Carriedo
                                                                 (Appointed)
                                                                 (619) 232-0900

**Prior Violation History:** Yes. Please refer to prior court correspondence.

---

## PETITIONING THE COURT
## TO AMEND THE ORIGINAL ORDER TO SHOW CAUSE DATED, SEPTEMBER 25, 2023, TO INCLUDE THE FOLLOWING ALLEGATIONS

The probation officer believes that the offender has violated the following conditions of supervision:

| CONDITIONS | ALLEGATION(S) OF NONCOMPLIANCE |
|---|---|

**(Mandatory Condition)**
Not commit another federal, state, or local crime.

14. On or about September 22, 2023, Mr. Nunez committed assault by means of force likely to produce great bodily injury, in violation of California Penal Code § 245(a)(4), a felony, as evidenced by the complaint filed in Superior Court of California, County of Imperial, Case No. JCF007262.

15. On or about September 22, 2023, Mr. Nunez resisted, delayed, or obstructed a peace officer, in violation of California Penal Code § 148(a)(1), a misdemeanor, as evidenced by the complaint filed in Superior Court of California, County of Imperial, Case No. JCF007262.

***Grounds for Revocation:*** As to allegations 14 and 15, this officer received and reviewed the Imperial County Sheriff's Office (ICSO) Incident Report No. 2309-1770 and the complaint filed in Superior Court of California, County of Imperial, Case No. JCF007262, which confirm the following: On September 22, 2023, at about 12:24 a.m., an ICSO deputy responded to a call in Calipatria, California, in reference to a subject who was pushed into a fire pit. Upon arrival, the ICSO deputy contacted the victim who was being seen by Calipatria Fire and American Medical Response. The victim had burns throughout the lower portion of his stomach, arms, and feet. The ICSO deputy questioned the victim as to what had happened that day. The victim stated he was in the "county area" at a bonfire when a subject he knew as "Spooks" pushed him into the fire. The victim stated that is how he sustained the injuries. When asked, the victim indicated he did not know the exact location of where the incident occurred; however, he only knew it was in the "county area." The victim said he walked to Calipatria from the location of the incident, as his sister lived in that city. The ICSO deputy asked the victim if he knew the true identity of "Spooks." The victim stated he did not, as he had just met him that day. The victim described "Spooks" as a light skinned Hispanic male adult, with short hair, a mustache, and tattoos throughout his body. The victim said "Spooks" drove a black four-door Honda Civic with a red Honda logo in the back of the vehicle. In addition, the victim indicated he had not been in any argument with "Spooks" prior to him pushing him into the fire pit. The victim was then transported to Pioneers Memorial Hospital in Brawley, California, for further medical treatment.

After speaking with the victim, the ICSO deputy proceeded to speak to the victim's sister. She informed the ICSO deputy that she got a call from her friend, Rachel, who told her that her brother was pushed into a fire pit and had burns throughout his body. The sister was unable to provide any further information but provided the ICSO deputy with Rachel's phone number.

While on scene, a Calipatria Police Officer informed the ICSO deputy he knew a person named Edward Nunez, whose moniker is "Spooks." The ICSO deputy checked his database and saw one of Mr. Nunez's booking photos. Mr. Nunez matched the description given by the victim. The ICSO deputy along with the Calipatria Police officer and another ICSO deputy went to the last known address for Mr. Nunez to contact him.

Upon arriving at the address, the ICSO deputy noticed a black Honda Civic with a red Honda logo parked in the driveway of the residence. The deputies also noticed the hood of the Honda was warm to the touch from the engine running. The deputies knocked on the door, and Mr. Nunez's girlfriend answered. The deputies informed her why they were at the residence and asked her if Mr. Nunez was there. Mr. Nunez's girlfriend told the deputies Mr. Nunez was not at the residence and that she did not know where he was. The girlfriend then told gave verbal consent to look inside the residence to verify Mr. Nunez was not there. As one of the deputies was conducting the search of the residence, he noticed Mr. Nunez hiding underneath the bed of one of his children. The ICSO deputy pulled out his department-issued firearm and ordered Mr. Nunez to get out from under the bed. Mr. Nunez complied with all orders and was detained without incident. The ICSO deputy took a picture of Mr. Nunez and sent it to a Brawley Police officer, who was with the victim at the hospital. The Brawley Police officer showed the victim the picture of Mr. Nunez, and he confirmed Mr. Nunez was the individual who pushed him into the bonfire.

Mr. Nunez and his girlfriend were both placed under arrest. ICSO deputies read Mr. Nunez's girlfriend her Miranda Rights, and she agreed to talk to the ICSO deputy. The ICSO deputy asked her why she had lied about Mr. Nunez not being inside the residence, and she explained she was scared he would get mad. She also indicated that they have had domestic violence issues in the past. Furthermore, she said Mr. Nunez had arrived home about twenty to thirty minutes prior to the arrival of the deputies and told her to shut up and not answer the door for anyone.

Deputies then spoke to Mr. Nunez. He was read his Miranda Rights, which he indicated he understood. He agreed to talk to the deputies. Mr. Nunez was advised of his charges and was asked about the incident with the victim that evening. Mr. Nunez confirmed he had just met the victim that day at a party in the county area. Mr. Nunez told the ICSO deputy he was unsure of the exact location of the party, as he was unfamiliar with the Calipatria area. Mr. Nunez then told the ICSO deputies he was at the party when he found the victim with burns throughout his body. The ICSO deputy then asked Mr. Nunez if he saw anyone push the victim into the fire pit, and he said no. Mr. Nunez said he then gave a ride to the victim to his sister's apartment in Calipatria. Mr. Nunez then said he had no reason to hurt the victim and that although the victim was "a little off," he would never hurt him. Mr. Nunez stated he left the victim with a female he knew as Rachel. However, Rachel accused him of hurting the victim, but he denied the allegations and left the area. Additionally, when asked, Mr. Nunez admitted he is known as "Spooks."

Finally, the ICSO deputy interviewed Rachel over the telephone. She informed she was in Calipatria when she saw a dark-colored sedan pull up and the victim exited the vehicle screaming. Rachel then approached the vehicle and saw burns throughout the victim's body. Rachel then called 9-1-1 and tried to help out the victim. Rachel stated the vehicle then took off, and she was unable to see who the driver was. However, she informed the ICSO deputy she knew the vehicle belonged to a male subject she knew as "Spooks." Rachel further stated she asked the victim who had done that to him, and the victim said "Spooks" had pushed him into a fire pit. Rachel disclosed she had heard from a couple of people that "Spooks" was using the victim to do some work for him and said he made him light a vehicle on fire in the El Centro, California, area the night prior.

On September 28, 2023, a two-count complaint was filed in Superior Court of California, County of Imperial, Case No. JCF007262, charging Mr. Nunez as alleged herein.

**AMENDED**    **VIOLATION SENTENCING SUMMARY**    **AMENDED**

## SUPERVISION ADJUSTMENT

There is no additional information since the Order to Show Cause Report submitted on September 25, 2023.

## OFFENDER PERSONAL HISTORY/CHARACTERISTICS

The Court is respectfully referred to the Order to Show Cause Report submitted on September 25, 2023, for the offender's personal history and characteristics.

## SENTENCING OPTIONS/RECOMMENDATIONS

The additional violations noted in this amended petition constitute the same grade of violations as reported in the petition for warrant dated September 25, 2023. There is no impact on the revocation imprisonment range. For the Court's review, a Grade A violation with a Criminal History Category V (determined at the time of sentencing) establishes an imprisonment range of 30 to 37 months. However, because the minimum of the imprisonment range exceeds the statutory maximum term, the adjusted imprisonment range is 24 months. With the aforementioned in mind, the sentencing recommendation remains the same. If the allegations of noncompliance are sustained, it is respectfully recommended the Court revoke supervised release and impose a custody term of 24 months, consecutive to any other term Mr. Nunez may be serving. A term of supervised release to follow is not recommended due to the lengthy custodial sentence.

**I declare under penalty of perjury that the foregoing is true and correct.**

**Executed on:  October 26, 2023**

Respectfully submitted:
JENNIFER K. WALKER
CHIEF PROBATION OFFICER

by

Obed Flores
Senior U.S. Probation Officer
(760) 339-4217

Reviewed and approved:

Lorena Gonzalez
Supervisory U.S. Probation Officer

**AMENDED**  **VIOLATION SENTENCING SUMMARY**  **AMENDED**

1. **Defendant:** Nunez, Edward

2. **Docket No.** (Year-Sequence-Defendant No.): 19CR01851-001-JO

3. **List Each Violation and Determine the Applicable Grade** (*See* USSG § 7B1.1):

| Violation(s) | Grade |
|---|---|
| Assault by means of force likely to produce great bodily injury | A |
| Corporal injury to Souse | A |
| Assault with a deadly weapon | A |
| Terrorist Threats | B |
| Resisting, delaying or obstructing a peace officer | C |
| Brandish deadly weapon | C |
| Resist, obstruct, delay a peace officer | C |
| Use of illicit substances | C |
| Failure to participate in drug testing | C |

4. **Most Serious Grade of Violation** (*See* USSG § 7B1.1(b))  [  A  ]

5. **Criminal History Category** (*See* USSG § 7B1.4(a))  [  V  ]

6. **Range of Imprisonment** (*See* USSG § 7B1.4(a))  [ 30 to 37 months ]

7. **Unsatisfied Conditions of Original Sentence**: List any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (*See* USSG § 7B1.3(d)):

| | | | |
|---|---|---|---|
| Restitution ($) | | Community Confinement | |
| Fine($) | | Home Detention | |
| Other | | Intermittent Confinement | |

PROB12(C)
Name of Offender: Edward Nunez
Docket No.: 19CR01851-001-JO

October 26, 2023
Page 6

## THE COURT ORDERS:

__✓__ THE ORIGINAL ORDER TO SHOW CAUSE DATED SEPTEMBER 25, 2023, BE AMENDED TO INCLUDE THE ABOVE ADDITIONAL ALLEGATIONS.

_____ Other _____

_____

_____


The Honorable Jinsook Ohta
U.S. District Judge

Date 11/1/23